UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LINDA BOUFERGUEN,<br><br>                Plaintiff,<br><br>   v.<br><br>ANDREW CUOMO, as the Governor of New York; and the CITY OF NEW YORK,<br><br>                Defendants. | 20-cv-3975<br><br>COMPLAINT |

**PRELIMINARY STATEMENT**

1. This civil-rights action seeks to vindicate the constitutional rights of New Yorkers who wish to engage in protest activity but are barred from doing so by an executive order issued by New York Governor Andrew Cuomo and adopted by the City of New York intended to protect the public from the threat of COVID-19. Under a series of executive orders dating back to March 23, 2020, "non-essential gatherings of any size for any purpose" have been banned in New York, a ban that has applied to all First Amendment activity. On Tuesday, May 19, the governor announced he would permit gatherings of up to ten people who engage in social distancing if the gathering was for the purpose of commemorating Memorial Day. The following day, on May 20, Governor Cuomo announced a further expansion of the exception to include "religious" gatherings of up to ten people who engage in social distancing. The governor memorialized these exceptions in a new executive order he issued the evening of May 21.

2. Plaintiff Linda Bouferguen is a New York City resident who has organized two small demonstrations near City Hall in New York City protesting the shutdown of economic activity across New York State. At each protest – one of which involved seven people and the

1

other fewer than twenty – all participants were at least six feet apart and nearly all wore masks. Ms. Bouferguen was arrested at both events and issued summonses, as were some other participants. She now wishes to organize another similar demonstration on May 23, 2020, at City Hall, and through the New York Civil Liberties Union she requested approval from New York City on Monday, May 18. Following the governor's announcements on May 19 and May 20, the NYCLU requested of the governor's office and New York City that protest events like the one Ms. Bouferguen planned – gatherings of up to ten people observing social distancing – be allowed to take place just like the ones the governor had newly authorized. As of the filing of this complaint, however, neither the governor nor New York City has modified their executive orders or otherwise agreed that Ms. Bouferguen's demonstration may take place without violating the executive order's ban on public gatherings and without risk of arrest.

3. The governor's executive order allowing gatherings commemorating veterans and allowing religious gatherings while barring protests that likewise would involve ten or fewer people observing social distancing violates the First Amendment, as would New York City's enforcement of the order. The plaintiff therefore seeks injunctive relief enjoining the executive order and a temporary restraining order requiring the defendants to allow Ms. Bouferguen's protest to take place on Saturday, May 23 without threat of enforcement or disruption.

**PARTIES**

4. Plaintiff Linda Bouferguen is a resident of Brooklyn, New York.

5. Defendant Andrew Cuomo is the governor of New York. He is sued in his official capacity.

6. Defendant the City of New York is a municipal corporation within the State of New York.

## FACTS

**The Public-Gathering Bans and New York City's Enforcement Practices**

7. On March 7, 2020, defendant Governor Andrew Cuomo issued an executive order declaring a state of emergency in response to the threat of COVID-19. Since then, he has issued a series of related executive orders restricting or barring a wide range of activity in New York State. New York City Mayor Bill de Blasio in turn has issued related executive orders adopting and incorporating provisions of the governor's executive orders.

8. On March 23, 2020 Governor Cuomo issued Executive Order 202.10, which contains numerous restrictions related to COVID-19. Included in that executive order was one barring a wide range of public gatherings: "Non-essential gatherings of individuals of any size for any reason (e.g., parties, celebrations or other social events) are canceled or postponed at this time." Mayor de Blasio subsequently issued an executive order adopting this provision (along with all other provisions of the governor's COVID-related executive orders).

9. In Executive Order 202.18 and Executive Order 202.29, Governor Cuomo continued the ban on "non-essential gatherings."

10. The New York City Police Department has played a significant role in enforcing the public-gatherings ban. As the ban applies to protest activities, the NYPD has enforced the ban against some protesters but not others.

11. The LGBTQ advocacy group Reclaim Pride Coalition held two press conferences to raise concerns about a conservative group's erection of a temporary medical site in Central Park. On April 14 near the Central Park site, about fifteen individuals participated, with masks and observing social distancing; a representative of the Mayor de Blasio's office was present as was a representative of NYPD Commissioner Dermot Shea; no enforcement action was taken

against the group. On May 3, the group planned a second small press conference near Beth Israel Hospital, with masks and social distancing, but police officers this time ordered the group to disperse and issued a summons to the lead organizer.

12. On Monday, May 11, New York City Public Advocate Jumaane Williams organized a demonstration in Foley Square to protest the NYPD's racially-biased enforcement of social-distancing guidelines. According to press reports, at least 50 people participated while wearing masks and observing social distancing. After holding a rally, the group marched to nearby police headquarters at One Police Plaza. A significant number of police officers were present throughout the event but made no effort to enforce the state or city public-gatherings bans. Upon information and belief, high-level NYPD officials were aware of the protest and made the decision not to enforce the public-gathering bans.

13. On Sunday, May 17, a group of seven people held a protest in midtown Manhattan in front of the headquarters of the New York State Democratic Party about its decision to cancel the presidential primary in New York; the protesters wore masks and observed social distancing. In advance of the protest, its organizer contacted the community affairs office of the local NYPD precinct, informed it of the planned protest, and was told it was fine to conduct it. At the event itself, police officers were present and made no effort to enforce the state or city public-gathering bans.

**Plaintiff Linda Bouferguen and Her Protest Activity**

14. Plaintiff Linda Bouferguen intends to participate in a small, peaceful demonstration in the vicinity of City Hall in Manhattan on Saturday, May 23.

15. Ever since Governor Cuomo declared a state of emergency, Ms. Bouferguen has been deeply concerned about the state's and the city's response to COVID-19. In particular, she

has harbored concerns about how defendants' efforts to curb the virus has affected her life and the lives of other New Yorkers.

16. On three occasions, all during May 2020, she has participated in peaceful, public demonstrations as a means of voicing these concerns. During each of these three public demonstrations, Ms. Bouferguen has observed proper social distancing by maintaining at least six feet between herself and other protestors (with the exception of her mother, who is in Ms. Bougerguen's household), and has protested peaceably.

17. During the first of these protests, which took place on May 2, 2020, Ms. Bouferguen joined hundreds of other protestors in Albany to march from the New York State Capitol to the Governor's Mansion. The police were present at the protest and appeared to have cordoned off the street to allow the protestors to march. On information and belief there was no violence at the May 2 protest and no one was arrested. At all times during the demonstration, Ms. Bouferguen protested peacefully and observed proper social distancing.

18. Six days later, on Friday, May 8, Ms. Bouferguen participated in another peaceful protest with around seven other people, including her mother, outside City Hall. The protest occurred from approximate 1:00 p.m. to 4:00 p.m. next to a locked gate such that none of the protestors was obstructing access to City Hall or the sidewalk. On information and belief, all of the protestors observed proper social distancing and none behaved violently.

19. Ms. Bouferguen's May 8 protest violated the defendants' public-gatherings ban.

20. Within minutes of the protest beginning police officers arrived on the scene and began telling Ms. Bouferguen and other protestors that they were assembled illegally.

21. By 4:00 p.m., approximately 50 police officers had arrived, and the police began playing a prerecorded message on a loudspeaker to the effect that the protestors were gathered

illegally and would be subject to arrest if they did not disperse.

22. Although all other protestors dispersed, leaving Ms. Bouferguen as the lone protestor, approximately 24 NYPD officers proceeded to surround Ms Bouferguen and arrest her.

23. At no point during her encounter with the NYPD on May 8 did Ms. Bouferguen resist arrest. To the contrary, when police officers approached Ms. Bouferguen to arrest her, she turned around with her hands behind her back, signaling that the officers could handcuff her.

24. After Ms. Bouferguen's arrest, the police took her to a van and detained her for approximately two hours, after which Ms. Bouferguen was released with a criminal summons. On information and belief, the summons was for violation of the dedendants' public-gatherings ban.

25. The following day, on Saturday, May 9, Ms. Bouferguen and her mother again participated in a peaceful demonstration in the vicinity of City Hall that began at around 1 p.m. Ms. Bouferguen's specific purpose for participating in this protest was to speak out concerning her arrest the previous day. On information and belief, fewer than twenty protestors were present, all of whom observed proper social distancing. None of the protestors behaved violently.

26. The May 9 demonstration violated the defendants' public-gatherings ban.

27. Within approximately 20 minutes of the May 9 protest beginning, the police arrested nine people, including Ms. Bouferguen, who were participating in or located in the immediate vicinity of the protest.

28. After their arrest, Ms. Bouferguen and the other protestors were detained in a cramped van for approximately 40 minutes without any ability to observe social distancing, and transported to a police precinct, where they remained for approximately two hours thereafter.

29. As a result of her May 9 arrest, Ms. Bouferguen was issued two summonses: one for "failure to disperse" and the other for "violating Mayor's Executive Order."

30. Ms. Bouferguen has organized another peaceful protest to occur at noon on Saturday, May 23, outside City Hall in Manhattan. Ms Bouferguen plans for the protest to occur in such a place and manner as not to obstruct the sidewalk or access to City Hall.

31. The purpose of the May 23 protest is to speak out about the defendants' response to COVID-19. The protest is not a religious service or ceremony or Memorial Day service or commemoration.

32. Like the other three demonstrations in which Ms. Bouferguen has participated related to COVID-19, Ms. Bouferguen intends to observe proper social distancing and anticipates no violence whatsoever. Ms. Bouferguen is prepared for the protest to have no more than ten people protesting at a time, all engaging in social distancing.

33. Because of her two recent arrests for participating in public demonstrations in violation of the defendants' public-gatherings ban, Ms. Bouferguen believes she will be arrested for participating in the May 23 protest.

34. Ms. Bouferguen is concerned not only about the humiliation of being arrested, but also that others will be too fearful of arrest to join her in criticizing the government publicly during the protest.

35. On Friday, May 15, the NYCLU contacted the New York City Law Department on behalf of Ms. Bouferguen to inform it of her planned event and to request that New York City confirm that the protest could take place without threat of enforcement on the basis of the state or city bans on public gatherings. In making this request, the NYCLU pointed to the fact that the NYPD had on at least two occasions allowed other protests to take place, most notably the May

11 rally and march led by Public Advocate Jumaane Williams.

36. On Monday, May 18, the NYCLU informed the New York City Law Department of the protest the NYPD had allowed to take place the prior day in midtown Manhattan at the Democratic Party headquarters.

37. On Tuesday, May 19, the New York City Law Department informed the NYCLU that New York City would not grant permission for Ms. Bouferguen's protest to take place in light of the state executive order barring non-essential public gatherings and that it could not make any representations that the NYPD would not take enforcement action if Ms. Bouferguen went forward with her planned protest.

38. Later on May 19, Governor Cuomo announced he would permit gatherings to take place over the Memorial Day weekend involving up to ten people observing social distancing if the gatherings were for the purpose of commemorating veterans. Upon learning of this, the NYCLU contacted the New York State Attorney General's Office to object to granting this exception while continuing the bar on other gathering protected by the First Amendment, including protests like Ms. Bouferguen's. The NYCLU also contacted the New York City Law Department to express the same objection and to request that New York City formally consent to Ms. Bouferguen being allowed to conduct her protest.

39. On May 20, Governor Cuomo announced a second exception to the public-gatherings ban, this time for "religious" gatherings of up to ten people observing social distancing. The NYCLU again promptly contacted the Attorney General's Office and the Law Department, further objected to the exceptions being made for certain First Amendment events but not others. With respect to New York City, the NYCLU again requested formal recognition that Ms. Bouferguen be allowed to hold her protest without threat of arrest of other enforcement.

40. Late on May 20, the NYCLU communicated to a senior member of Governor's Cuomo's office the NYCLU's concerns about the excepting of events commemorating Memorial Day and of religious events. The NYCLU urged the office to amend the ban on gatherings to allow all First Amendment events of ten or fewer people observing social distancing.

41. On the evening of May 21, Governor Cuomo issued Executive Order 202.32. In relevant part it states, "Executive Order 202.10 (as later extended by Executive Order 202.18 and Executive Order 202.29), which prohibited all non-essential gatherings of any size for any reason, is hereby modified to permit a gathering of ten or fewer individuals for any religious service or ceremony, or for the purposes of any Memorial Day service or commemoration, provided that social distancing protocols and cleaning and disinfection protocols required by the Department of Health are adhered to . . . ."

42. As of the filing of this complaint, New York City has refused to consent to Ms. Bouferguen holding her protest without threat of arrest or other enforcement.

## CAUSE OF ACTION

43. The defendants' actions violate the plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

44. This Court has subject-matter jurisdiction over the plaintiffs' claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3)–(4).

45. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) in that the plaintiffs' claims arise in the Southern District of New York.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs request that this Court:

(a) Assume jurisdiction over this matter;

(b) Declare the defendants' actions violate the First Amendment to the United States Constitution;

(c) Temporarily restrain the defendants from enforcing their public-gatherings bans against the plaintiff's event scheduled for May 23, 2020;

(d) Permanently enjoin the defendants from enforcing their public-gatherings bans against protest events with ten or fewer people who engage in social distancing for as long as the defendants permit other events that likewise involve ten or fewer people who observe social distancing;

(e) Award the plaintiff attorneys' fees and costs; and

(f) Grant any other relief the Court deems appropriate.

Respectfully submitted,

NEW YORK CIVIL LIBERTIES UNION FOUNDATION, by

s/*Christopher Dunn*
CHRISTOPHER DUNN
ANTONY GEMMELL
125 Broad Street, 19th Floor
New York, NY 10004
(212) 607-3300
cdunn@nyclu.org

Dated: May 22, 2020
New York, N.Y.